IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

REBECCA MULLEY,

        Plaintiff,

v.                                      Civil Action No.5:04-CV-121

JO ANNE B. BARNHART,
COMMISSIONER OF
SOCIAL SECURITY,
        Defendant.

## REPORT AND RECOMMENDATION
## SOCIAL SECURITY

### I. Introduction

A.    Background

    Plaintiff, Rebecca Mulley, (Claimant), filed her Complaint on October 29, 2004 seeking Judicial review pursuant to 42 U.S.C. § 405(g) of an adverse decision by Defendant, Commissioner of Social Security, (Commissioner).[1]  Commissioner filed her Answer on January 18, 2005.[2] Claimant filed her Motion for Summary Judgment and Brief in Support Thereof on February 16, 2005.[3]  Commissioner filed her Motion for Summary Judgment and Brief in Support Thereof on March 23, 2005.[4]

B.    The Pleadings

        1.    Claimant's Motion for Summary Judgment and Brief in Support Thereof.

        2.    Commissioner's Motion for Summary Judgment and Brief in Support

---

[1] Docket No. 1.

[2] Docket No. 2.

[3] Docket No. 3.

[4] Docket Nos. 4.

<u>Thereof</u>.

C.    <u>Recommendation</u>

1.    I recommend that Claimant's Motion for Summary Judgment be DENIED because the ALJ was substantially justified in his decision. Specifically, the ALJ properly considered the Claimant's combined impairments and subjective complaints of pain when making his determination. Also, the ALJ gave proper weight to the opinion of Claimant's treating physicians, Dr. Govindan, Dr. Fishman and Dr. Romano. Finally, the ALJ posed a proper hypothetical to the VE.

2.    I recommend that Commissioner's Motion for Summary Judgment be GRANTED for the same reasons set forth above.

## II. Facts

A.    <u>Procedural History</u>

On March 10, 2000 Claimant filed her first application for Disability Insurance Benefits (DIB) alleging disability since September 28, 1999. The application was denied initially and on reconsideration. A hearing was held on September 27, 2001 before an ALJ. The claim was ultimately denied.

Claimant filed her second application for DIB on October 23, 2001. A hearing was held on April 18, 2003. The ALJ's decision dated June 18, 2003 denied the claim finding Claimant not disabled within the meaning of the Act. The Appeals Council denied Claimant's request for review of the ALJ's decision on September 3, 2004. This action was filed and proceeded as set forth above.

B.    <u>Personal History</u>

Claimant was 48 years old on the date of the April 18, 2003 hearing before the ALJ.

Claimant has a high school education and past relevant work experience as an insurance clerk.

C.    Medical History

The following medical history is relevant to the time period during which the ALJ

concluded that Claimant was not under a disability September 28, 1999 -June 18, 2003:

**Wheeling Hospital**
**Tr. 127**
•        Diagnosis: Head Injury, Memory Loss.

**Wheeling Hospital**
**2/22/00 Tr. 146**
•        Diagnosis: Migraine Headache.

**Ohio Valley Medical Center**
**Srini Govindan, M.D. 6/17/99 Tr. 151**
•        Impression: No active disease.

**Wheeling Hospital Radiology**
**Thomas Ream, M.D. 9/29/99 Tr. 152**
•        Impression: Right Breast: Category 2 - benign finding. There has been no change in the
         nodular density in the superior axillary portion of the right breast from films of 1996.
         Recommend follow up study at one year.
•        Left Breast: Category 0 - additional imaging recommended.

**Wheeling Hospital**
**Terry Stake, M.D. 2/23/00 Tr. 157**
•        Impression: Normal unenhanced CT scan of the head.

**Henry L. Kettler, M.D. 11/17/99 Tr. 171**
•        Impression: Subjective tiredness and fatigue. Difficulty with memory and performance.
         Possible depression.

**Henry Kettler, M.D. 8/28/97 Tr. 173**
•        Impression: I feel that this is a migraine problem with ischemic visual symptoms. She
         mentions also that sometimes feels like she is having some memory difficulty. It is
         possible for vascular insufficiency to persist for a number of days after each migraine-
         like attack.

**Wheeling Hospital Radiology**
**Henry Kettler, M.D. 12/24/99 Tr. 174**
•        Impression: Essentially negative study for significant abnormality with only a few tiny

predominately left sided foci of increased signal demonstrated.

**Physical Residual Functional Capacity Assessment**
**Dr. Simmons, 5/25/00 Tr. 188-194**
- Exertional limitations: Occasionally 20 lbs., frequently 10 lbs., sit 6 of 8 hours, unlimited push and pull.
- Postural limitations: Should never climb ramp, stairs, ladder, rope or scaffolds. All others occasionally.
- Manipulative limitations: None established.
- Visual limitations: Limited field of vision.
- Communicative limitations: None established.
- Environmental limitations: Avoid concentrated exposure to hazards.

**Behavioral Associates, P.C.**
**Frank Eibl, M.A. 6/5/00 Tr. 198**
- Diagnosis: Axis I: 311 Depressive disorder, not otherwise specified.
- Axis II: Possible cognitive difficulties, however, in need of further assessment.
- Axis III: Reported chronic fatigue syndrome, reported Epstein-Barr virus.

**Psychiatric Review Technique**
**6/15/00 Tr. 200-208**
- Impairment(s) Not Severe.
- Affective Disorder.
- Disturbance of mood, accompanied by a full or partial manic or depressive syndrome.
- No substance addiction disorder.
- Slight restriction on activities of daily living, difficulties in maintaining social functioning and seldom difficulties of concentration, persistence or pace resulting in failure to complete tasks in a timely manner.

**Ohio Valley Medical Center**
**Srini Govindan, M.D. 6/17/99 Tr. 211**
- Impression: Sleep apnea.

**Ohio Valley Medical Center**
**Srini Govindan, M.D. 8/31/99 Tr. 213**
- Diagnosis: Rule out sleep apnea, rule out narcolepsy.

**Ohio Valley Medical Center**
**6/19/99 Tr. 214**
- Impression: No active disease.

**Ohio Valley Medical Center**
**Srini Govindan, M.D. 7/2/99 Tr. 216**
- Diagnosis: Probable normal EEG.

**Ohio Valley Medical Center**
**Srini Govindan, M.D. 5/22/00 Tr. 217**
- Impression: Compared to the first night the study showed a difference as follows. The first night baseline study showed 327 arousals, 22 awakenings, arousal index of 51 and arousal/awakening index of 54.
- The second night study was done with attempted CPAP. The arousals were 119 compared to 327 the first night, awakenings were 15 compared to 22 the first night and the arousal index was 19.4 compared to 51 the first night.
- Periodic movements first night were 66 compared to 14 the second night. The apnea/hypopnea index during CPAP was 0.8 with a lowest SAO2 of 88%.
- The patient was started on 5 cm of CPAP with standard Simplicity nasal mask. CPAP was removed at 2442 hours since the patient could not tolerate this.

**Srini Govindan, M.D. 6/9/99 Tr. 233**
- Diagnosis: Rule out narcolepsy.
- History of surgery for sleep apnea, will review records.
- Status post carpal tunnel surgery bilateral.
- Memory loss, effecting her daily activities. Unable to obtain family history for Alzheimer's Disease.

**Physical Residual Functional Capacity Assessment**
**9/3/00 Tr. 236-242**
- Exertional limitations: Occasionally 50 lbs., frequently 25 lbs., stand 6 of 8 hours, sit 6 of 8 hours, unlimited push and pull.
- Postural limitations: All frequently.
- Manipulative limitations: None established.
- Visual limitations: None established.
- Communicative limitations: None established.
- Environmental limitations: Avoid concentrated exposure to hazards.

**Wheeling Hospital**
**Srini Govindan, M.D. 11/27/00 Tr. 275**
- Impression: No evidence of acute radiculopathy.
- Needle examination showed chronic changes in the right S1 distribution clinical correlation is suggested with any abnormalities in the x-ray, CT, or MRI of the lumbosacral region.
- Bilateral ulnar neuropathy, motor, mild.
- Right radial sensory neuropathy, mild.

**Wheeling Hospital**
**Srini Govindan, M.D. 10/30/00 Tr. 276**
- Impression: Normal appearing MRI of the lumbar spine. No herniated discs or significant spinal stenosis seen.

**Wheeling Hospital**
**Srini Govindan, M.D. 10/30/00 Tr. 277**
- Impression: Normal appearing lumbar spine.

**Wheeling Hospital**
**Thomas Ream, M.D. 10/12/00 Tr. 278**
- Impression: Category 1/ negative for malignancy or change since 9/28/99 annual follow-up exams are suggested.
- Prior right biopsy.

**Wheeling Hospital**
**Thomas Ream, M.D. 2/23/00 Tr. 279**
- Impression: Normal unenhanced CT scan of the head.

**Physical Residual Functional Capacity Assessment**
**12/6/01 Tr. 433-438**
- Exertional limitations: Occasionally 20 lbs., frequently 10 lbs., stand/and or walk 6 of 8 hours, sit 6 of 8 hours, unlimited push and pull.
- Postural limitations: All occasionally.
- Manipulative limitations: None established.
- Visual limitations: None established.
- Communicative limitations: None established.
- Environmental limitations: Avoid concentrated exposure to extreme hot and cold and to hazards.

**Frank Eibl, Jr., M.A. 1/30/02 Tr. 476**
- Diagnostic Impression: Axis I: 294.9 - Cognitive disorder, not otherwise specified, possibly related to previous head injury.
- Axis II: V62.89 - Borderline intellectual functioning with an IQ of 71 to 84.
- Axis III: Continued difficulties involving memory; excessive sleep patterns; and back, leg, and knee difficulties; reported hearing acuity difficulties; and reported vascular flow difficulties.

**Mental Residual Functional Capacity Assessment**
**2/1/02 Tr. 479-480**
- Markedly limited in ability to understand and remember and carry out detailed instructions.
- Moderately limited in ability to maintain attention and concentration for extended periods and when performing activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.
- Moderately limited in ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.
- Moderately limited in ability to respond appropriately to changes in the work setting and

in ability to travel in unfamiliar places or use public transportation.

**Psychiatric Review Technique**
**2/1/02 Tr. 484-485, 494-495**
- RFC Assessment Necessary.
- Coexisting nonmental impairment(s) that requires referral to another medical specialty.
- Organic Mental Disorders.
- Memory Impairment.
- Mild restriction of activities of daily living and difficulties in maintaining social functioning.
- Moderate restriction in maintaining concentration, persistence, or pace.
- Evidence does not establish the presence of the "C" criteria.

**Psychiatric Review Technique**
**Samuel Goots, Ph.D. 7/18/02 Tr. 520, 530-531**
- Impairment(s) Not Severe.
- Organic Mental Disorders.
- Affective Disorders.
- Mild restriction in maintaining concentration, persistence, or pace.
- Evidence does not establish the presence of "C" criteria.

**Physical Residual Functional Capacity Assessment**
**Hugh Brown, M.D. 7/22/02 Tr. 536-542**
- Exertional limitations: Occasionally 20 lbs., frequently 10 lbs., stand and/or walk 6 of 8 hours, sit 6 of 8 hours, unlimited push and pull.
- Postural limitations: All occasionally.
- Manipulative limitations: None established.
- Visual limitations: None established.
- Communicative limitations: None established.
- Environmental limitations: None established.

**Wheeling Hospital**
**Robert Zaleski, M.D. 12/14/01 Tr. 586**
- Preoperative diagnosis: Chronic lateral epicondylitis of elbow.
- Postoperative diagnosis: Same.

**Ohio Valley Medical Center**
**Leslie Latterman, D.O. 12/25/02-12/28/02 Tr. 612**
- Admission Diagnosis: Intractable abdominal pain, etiology unclear.
- Discharge Diagnosis: Resolution of intractable abdominal pain, etiology unclear. Unexplained weight loss.

**Ohio Valley Medical Center**
**Lisa Hrutkay, D.O. 12/25/02 Tr. 615**

- Diagnosis: Intractable abdominal pain - etiology unclear.

**Ohio Valley Medical Center**
**Lisa Hrutkay, D.O. 12/24/02 Tr. 619**
- Diagnosis: Acute constipation.

**Ohio Valley Medical Center**
**Leslie Latterman 12/26/02 Tr. 622**
- Impression: No CT evidence of acute abdominal or pelvic process.
- 3 cm simple appearing left ovarian/adnexal cyst.
- Sub 5 mm noncaclified nodule in the anterior aspect of the right middle lobe which is an indeterminate finding.
- 2 mm calcified granuloma in the left lung base.
- Minimal linear scarring in the left lung base.
- Sub 5 mm focal low attenuation lesion within the right lobe of the liver which is technically indeterminate due to small size, however most likely represents an hepatic cyst or hemangioma.

**Ohio Valley Medical Center**
**Leslie Latterman 3/21/03 Tr. 623**
- Impression: Negative ultrasound abdomen.

**Ohio Valley Medical Center**
**Robert Cross, M.D.  12/30/02 Tr. 624**
- Preoperative diagnosis: Abdominal pain; obstipation.
- Postoperative diagnosis: External hemorrhoids; normal colonoscopic exam.
- Impression: External hemorrhoids; abdominal pain; obstipation.

**Ohio Valley Medical Center**
**Shawn Posin, M.D. 1/6/03 Tr. 625**
- Diagnosis: Acute migraine cephalgia.

**Ohio Valley Medical Center**
**Thomas Ream, M.D. 3/4/03 Tr. 629**
- Impression: Stable sub 5 mm bilateral pulmonary nodules as described.
- Minimal paraseptal emphysematous changes in the anteromedial aspect of the left upper lobe.
- Minimal linear scarring in the lingula.
- Stable sub 5 mm low attenuation focus within the posterior aspect of the right lobe of the liver.
- Stable simple appearing 3 cm left ovarian adnexal/ovarian cysts.

**Behavioral Health Management, Inc.**
**John McFadden, Psy.D. 12/2/02 Tr. 632**

- Diagnostic Impression: Axis I: Dysthymic Disorder. Rule out Vascular Dementia.
- Axis II: Deferred.
- Axis III: History of glaucoma, hyperlipidemia, migraine headache and fibromyalgia.
- Axis IV: Stress of unemployment and current marital stress.
- Axis V: Current GAF, 50; highest in past year, uncertain.

D.      Testimonial Evidence

1. Claimant

Testimony was taken at the hearing from Claimant, who testified as follows (Tr. 786-88):

Q      Okay.  Now, since '99, what has been the main problem affecting your ability to do any work?

A      Well, actually, it's kind of a combined thing.  It's - - outside of the extreme pain, I have trouble remembering.  It's hard for me to read and understand.

Q      Anything else that causes you difficulty with working?

A      I have the sleep apnea that I had surgery for before, but it just seemed to - - over the years, it's like it didn't do - - I mean it went back to the way it was.

*              *              *

Q      A year ago?  Now, what - - when you say pain and trouble remembering, is this from fibromyalgia?

A      I don't know what that's from.  I just - - things get so scrambled up that people can tell me, explain things to me, and it all doesn't stay there.  I forget.  I can't focus.

Q      Okay.  Well, where does the pain occur?

A      That's pretty much all over.  I have migraines a lot.

Q      How often do you have migraine headaches?

A      About three to four times a week.

9

Q      And what do you do when they come on?

A      There isn't a whole lot I can do.  I have different medicines.  If it's really bad, then I use the Imitrex injections.  And if it doesn't let up, I don't mix anything else with it.  I'll wind up in the emergency room?

*          *          *

2. Vocational Expert

Testimony was taken at the hearing from Vocational Expert, who testified as follows (Tr. 812-14):

Q      Well, let me give you a hypothetical.   Well, first, let me just ask you - - well - - let me just really ask it in the way of a hypothetical.  If we assume a person of the same age, education, and work experience of the Claimant; assume a person who's able to do light work as that's defined in the Commissioner's regulations; but assume a person would have to be able to change positions briefly - - and by briefly, I mean for just a minute or two - - at least every half-hour.  The job should not - - no requirement for excellent memory; no closed concentration or attention to detail for extended periods of time; no significant workplace hazards like heights or dangerous, moving machinery, or knives; and should be flexible time schedules so the job should permit the person to take extra time in order to complete a job; should not be - - say, should not be fast-paced or assembly lines where you're dependent on other people, and other people are dependent on you, but flexible time.  Let's see.  No detailed or complex instructions; and the job should not involve travel as part of the work - - part of the job; and no more than rare changes in the work setting.  Would there be any jobs such a person could do that would have any transferable skills from her prior job?

A       No, Your Honor.  The type of work she did before, the only skills that would transfer would require speed, accuracy, and attention to detail.

Q       That makes sense.  Would there be any unskilled work such a person could do at the light or sedentary levels?

A       There are light jobs, Your Honor, that are not assembly line that would comply with the other aspects of your hypothetical.  Some examples that I could offer would be that of office cleaners.  There are 1,100 in the local labor market; 240,000 nation.  There are laundry folders: 300, local; 48,000, nation.  There are also silverware wrappers: 300, local; 74,000 nation.  That would be it, Your Honor.

Q       Any sedentary-level work?

A       No, Your Honor.  The only types of jobs that are simple and routine that would have all of the other aspects of your hypothetical would be jobs that would have production demands; and there would be clerical jobs that wouldn't have production demands, but they would require attention to detail and accuracy.

Q       Okay.  I don't have any other - - well, is your testimony consistent with the DOT?

A       It is, Your Honor.  The only exception would be that the DOT does not describe the ability to change positions, or a sit/stand option.  The reason I offered the jobs that I did was based on my experience in work for the past 23 years.  These types of jobs, typically, allow the individual to change positions at the frequency indicated in the hypothetical.

*               *               *

E.       Lifestyle Evidence

The following evidence concerning the Claimant's lifestyle was obtained at the hearing

and through medical records. The information is included in the report to demonstrate how the Claimant's alleged impairments affect her daily life.

- Can walk 10 minutes. (Tr. 789).

- Can stand for 10-15 minutes. (Tr. 789).

- Can sit for 30 minutes. (Tr. 790).

- Can use kitchen utensils and hold a glass. (Tr. 792).

- Can lift a gallon of milk. (Tr. 792).

- Drives a car. (Tr. 796).

- Cooks. (Tr. 800).

- Can do laundry. (Tr. 800).

- Vacuums occasionally. (Tr. 801).

- Visits friends and relatives. (Tr. 801).

- Watches TV. (Tr. 803).

- Occasionally walks the dog. (Tr. 803).

## II. The Motions for Summary Judgment

A.     Contentions of the Parties

Claimant contends that the ALJ's decision is not supported by substantial evidence. Specifically, Claimant contends that the ALJ failed to assess the combined  impact of Claimant's physical and psychological impairments when determining her Residual Functional Capacity (RFC). Also, Claimant asserts that the ALJ failed to consider Claimant's subjective complaints of pain. In addition, Claimant asserts that the ALJ improperly rejected the opinions of Claimant's treating physicians. Finally, Claimant contends that the ALJ posed an improper hypothetical to the

Vocational Expert (VE).

Commissioner maintains that the ALJ's decision was supported by substantial evidence. Specifically, the Commissioner maintains that the ALJ properly considered Claimant's combined physical and psychological impairments. Also, the Commissioner contends that the ALJ properly evaluated the Claimant's subjective complaints of pain and limitations. In addition, the Commissioner contends that the ALJ properly evaluated the opinions of Claimant's treating physicians. Finally, the Commissioner maintains that the ALJ posed a proper hypothetical to the VE.

B.    The Standards.

1.    Summary Judgment.    Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  All inferences must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec.  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson v.  Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

2.    Judicial Review.    Only a final determination of the Commissioner may receive judicial review.  See 42 U.S.C. §405(g), (h); Adams v. Heckler, 799 F.2d 131,133 (4th Cir. 1986).

3.    Social Security - Medically Determinable Impairment - Burden. Claimant bears the

burden of showing that she has a medically determinable impairment that is so severe that it prevents her from engaging in any substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(1), (d)(2)(A); Heckler v. Campbell, 461 U.S. 458, 460 (1983).

4.   Social Security - Medically Determinable Impairment.   The Social Security Act requires that an impairment, physical or mental, be demonstrated by medically acceptable clinical or laboratory diagnostic techniques.   42 U.S.C. § 423(d)(1), (3); Throckmorton v. U.S. Dep't of Health and Human Servs., 932 F.2d 295, 297 n.1 (4th Cir. 1990); 20 C.F.R. §§ 404.1508, 416.908.

5.   Disability Prior to Expiration of Insured Status- Burden.   In order to receive disability insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status.   Highland v. Apfel, 149 F.3d 873, 876 (8th Cir. 1998) (citing 42 U.S.C. §§ 416(i), 423(c); Stephens v. Shalala, 46 F.3d 37, 39 (8th Cir.1995)).

6.   Social Security - Standard of Review.   It is the duty of the ALJ, not the courts, to make findings of fact and to resolve conflicts in the evidence.   The scope of review is limited to determining whether the findings of the Secretary are supported by substantial evidence and whether the correct law was applied, not to substitute the court's judgment for that of the Secretary.   Hayes v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

7.   Social Security - Scope of Review - Weight Given to Relevant Evidence.   The Court must address whether the ALJ has analyzed all of the relevant evidence and sufficiently explained his rationale in crediting certain evidence in conducting the "substantial evidence inquiry."   Milburn Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir. 1998). The Court cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence.   Gordon v. Schweiker, 725 F.2d 231, 235-36 (4th Cir. 1984).

8.      Social Security - Substantial Evidence - Defined.  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Substantial evidence consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citations omitted).

9.      Social Security - Sequential Analysis.  To determine whether Claimant is disabled, the Secretary must follow the sequential analysis in 20 C.F.R. §§ 404.1520, 416.920, and determine: 1) whether claimant is currently employed, 2) whether she has a severe impairment, 3) whether her impairment meets or equals one listed by the Secretary, 4) whether the claimant can perform her past work; and 5) whether the claimant is capable of performing any work in the national economy.  Once claimant satisfies Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have listed impairments but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job.  Rhoderick v. Heckler, 737 F.2d 714-15 (7th Cir. 1984).

10.     Social Security - Treating Physician - Controlling Weight - The opinion of a treating physician will be given controlling weight if the opinion is 1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and 2) not inconsistent with other substantial evidence in the case record.  20 C.F.R. § 416.927(d)(2).  See also  Evans v. Heckler, 734 F.2d 1012 (4th Cir. 1984); Heckler v. Campbell, 461 U.S. 458, 461 (1983); Throckmorton v.  U.S. Dep't of Health and Human Servs., 932 F.2d 295, 297 n.1 (4th Cir.  1990).

11.     Social Security - Claimant's Credibility - Pain Analysis.  The determination of whether a person is disabled by pain or other symptoms is a two step process.  First, the ALJ must expressly consider whether the claimant has demonstrated by objective medical evidence an

impairment capable of causing the degree and type of pain alleged. Second, once this threshold determination has been made, the ALJ must consider the credibility of her subjective allegations of pain in light of the entire record. Craig v. Chater, 76 F.3d 585 (4th Cir. 1996).

12. Social Security - Vocational Expert - Hypothetical. In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record and it must be in response to proper hypothetical questions which fairly set out all of the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989). The ALJ is afforded "great latitude in posing hypothetical questions," Koonce v. Apfel, No. 98-1144, 1999 WL 7864, at *5 (4th Cir. Jan.11, 1999)[5], and need only pose those that are based on substantial evidence and accurately reflect the plaintiff's limitations. Copeland v. Bowen, 861 F.2d 536, 540-41 (9th Cir. 1988).

13. Social Security - Combined Impairments. "Congress explicitly requires that 'the combined effect of all the individual's impairments' be considered 'without regard to whether any such impairment if considered separately' would be sufficiently severe." Walker v. Bowen, 889 F.2d 47 (4th Cir. 1989) (citations omitted). "[T]he Secretary must consider the combined effect of a claimant's impairments and not fragmentize them. Id. "[T]he ALJ must adequately explain his or her evaluation of the combined effects of the impairments. Id.

C. Discussion

### 1. Combined Impairments

---

[5] This Court recognizes that the United States Court of Appeals for the Fourth Circuit disfavors citation to unpublished opinions. I recognize the reasons for that position and acknowledge it. Unfortunately, there is not a better indicator of what its decision might be in this regard.

Claimant contends that the ALJ failed to consider the combined impact of Claimant's physical and psychological impairments when determining her Residual Functional Capacity (RFC). Commissioner countered that the ALJ properly considered Claimant's combined physical and psychological impairments.

"Congress explicitly requires that 'the combined effect of all the individual's impairments' be considered 'without regard to whether any such impairment if considered separately' would be sufficiently severe." Walker v. Bowen, 889 F.2d 47 (4th Cir. 1989) (citations omitted). "[T]he Secretary must consider the combined effect of a claimant's impairments and not fragmentize them. Id. "[T]he ALJ must adequately explain his or her evaluation of the combined effects of the impairments. Id.

In the present case, the ALJ found that the "claimant has severe impairments related to her complaints in the form of cognitive disorder, not otherwise specified, dysthymic disorder, sleep apnea, hypersomnolence, fibromyalgia, myofascial pain disorder, osteoarthritis of the knees, migraines, and history of bilateral carpal tunnel syndrome and bilateral lateral epicondylitis. The claimant's reported vision problems are found to be stable with the treatment prescribed by Dr. Strauch." (Tr. 25). The ALJ stated that the Claimant's impairments were not at a level of severity to "satisfy the requirements of any of the impairments detailed in Sections 1.00 or Section 11.00, respectively, of Appendix 1." (Tr. 25). With respect to Claimant's mental impairments, the ALJ determined that when the impairments were evaluated under the "B" and "C" criteria, were "not at a level of severity to establish the presence of a presumptive disability." (Tr. 25).

In determining Claimant's residual functional capacity the ALJ included limitations related to Claimant's impairments. The ALJ stated that the Claimant had the RFC to the do the following:

"[s]he is able to perform the demands of light work with certain modifications. She must be allowed to change positions briefly (for about one to two minutes). She is unable to be exposed to significant workplace hazards, such as heights, dangerous moving machinery, or knives. She is limited to jobs that do not require excellent memory, close concentration or attention to detail for extended periods, fast paced or assembly-line work, detailed or complex instructions, travel as part of the job, or more than rare changes in the work setting. She must have a flexible schedule in terms of completing work assignments. She must be allowed to miss up to one day of work per month." (Tr. 32). Therefore, the ALJ did consider the combination of Claimant's impairments in assessing her ability to work.

## 2. Subjective Complaints of Pain

Claimant asserts that the ALJ failed to consider Claimant's subjective complaints of pain. The Commissioner counters that the ALJ properly evaluated the Claimant's subjective complaints of pain and limitations.

The determination of whether a person is disabled by pain or other symptoms is a two step process. First, the ALJ must expressly consider whether the claimant has demonstrated by objective medical evidence an impairment capable of causing the degree and type of pain alleged. Second, once this threshold determination has been made, the ALJ must consider the credibility of her subjective allegations of pain in light of the entire record. Craig v. Chater, 76 F.3d 585 (4th Cir. 1996).

In this case the ALJ correctly applied the Craig test. The ALJ found "that the evidence of record related to the period in question establishes a basis for a degree of pain and functional limitations associated with the claimant's impairments, but fails to support the disabling degree alleged by the claimant." (Tr. 29). This satisfies the first prong of Craig. The ALJ then considered

Claimant's credibility in light of the entire record. The ALJ found that "the claimant gave conflicting testimony regarding her ability to concentrate while reading. She gave a history of migraines since the mid 1970s, but was able to work until 1999 despite the alleged migraines." (Tr. 29). "The claimant alleged that she did not improve following the elbow surgery. However, Dr. Ream opined that the claimant would be able to return to full activities shortly after the surgery. Further, Dr. Romano reported significant improvement in range of motion of the claimant's shoulders after she received injections. Dr. Govindan has reported no focal abnormality and he reported some improvement in the claimant's sleep disorders." (Tr. 29). Despite the Claimant's complaints, "Dr. McFadden has reported improvement in the claimant's depression after the start of treatment in December 2002. He has reported that this problem was related primarily to the claimant's marital difficulties." (Tr. 29). Also, the claimant has complained of decreased vision in the left eye and day-time sleepiness, "but testified that she is able to drive." (Tr. 29). The ALJ considered Claimant's subjective complaints of pain in light of the entire record in accordance with the second prong of <u>Craig</u>. Therefore, the ALJ properly assessed Claimant's credibility as to her subjective complaints of pain.

3.  <u>Opinion of Treating Physician</u>

Claimant asserts that the ALJ improperly rejected the opinions of Claimant's treating physicians. Commissioner counters that the ALJ properly evaluated the opinions of Claimant's treating physicians.

The opinion of a treating physician will be given controlling weight if the opinion is 1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and 2) not inconsistent with other substantial evidence in the case record. 20 C.F.R. § 416.927(d)(2). <u>See</u>

also  Evans v. Heckler, 734 F.2d 1012 (4th Cir. 1984); Heckler v. Campbell, 461 U.S. 458, 461 (1983); Throckmorton v.   U.S. Dep't of Health and Human Servs., 932 F.2d 295, 297 n.1 (4th Cir.  1990).

In the present case, the Claimant mistakenly argues that the ALJ erred in rejecting the opinions of Dr. Govindan, Dr. Fishman and Dr. Romano. The opinions given by Claimant's treating physicians were not supported by objective findings. The ALJ determined that the opinions of Dr. Govindan, Dr. Fishman and Dr. Romano were "found to be based primarily on the claimant's subjective complaints" and were "not reported objective findings." (Tr. 28).

Also, the opinions of Dr. Govindan, Dr. Fishman and Dr. Romano are inconsistent with other substantial evidence in the case record. First, Dr. Govindan opined on April 10, 2001 that the "claimant was incapable of sedentary activity due to fatigue and sleepiness." (Tr. 28). However, "the record fails to support the claimant's complaints of disabling fatigue and establishes improvement in the claimant's sleepiness after April 2001." (Tr. 28). Also, the Claimant testified that she is able to drive a car, a feat inconsistent with day-time sleepiness. (Tr. 29).  Also,  Dr. Govindan's notes dated November 13, 2002 indicate that the Claimant's medication, "namely Provigil, is allowing her to deal with her day time sleepiness." (Tr. 638). Second, Dr. Fishman reported on October 16, 2001 that the claimant was clearly having considerable cognitive/behavioral impairment and opined that return to work/employment did not seem appropriate." (Tr. 28). However, "Dr. Govindan reported that the claimant was conscious, alert, oriented, and cooperative. Neurological examination revealed no new focal abnormality. Neurological examination by Dr. Govindan on April 12, 2002, revealed that the claimant was conscious, alert, and oriented. Reflexes, coordination, and gait indicated no significant new

abnormality. Dr. Govindan reported similar neurological findings on July 5, 2002 (Exhibit B-23F) and November 13, 2003 (Exhibit B-29F)." (Tr. 23). In addition, Dr. McFadden reported on December 2, 2002, that on "examination the claimant was alert, oriented, and cooperative. Higher cognitive functions were grossly intact, and there was no tangentiality or digression. Affect was appropriate, and there was no evidence of thought blocking." (Tr. 24). Dr. Fishman rated four of the Claimant's skill areas severe. "Two of these areas that were found to be severely impaired, upper extremity fine motor dexterity, bilaterally, appear to have been influenced by the claimant's epicondylitis that necessitated the surgery in December 2001." (Tr. 28) The other two areas that were found to be severely impaired, simple visual attention/visual scanning speed and visuomotor speed, are found to have been adequately accommodated by the RFC limitations. (Tr. 28).

Finally, the opinion of Dr. Romano is an ultimate issue reserved to the Commissioner. Dr. Romano and Dr. Fishman both opined that the Claimant was disabled. Dr. Romano stated that that he "cannot imagine a job this patient can do on a regular basis for compensation." (Tr. 28). Statements by a medical source that an individual is "disabled" or "unable to work" are not medical opinions but, rather, are opinions on issues reserved to the Commissioner because they are administrative findings that would direct the determination or decision of disability. See 20 C.F.R. § 404.1527(e). Dr. Romano's opinion is also inconsistent with other evidence of the record. For example, Dr. Govindan reported on April 12, 2002 that "[r]eflexes, coordination, and gait indicated no significant new abnormality. Dr. Govindan reported similar neurological findings on July 5, 2002 (Exhibit B-23F) and November 13, 2003 (Exhibit B-29F)." (Tr. 23). In addition, Dr. Romano reported that the claimant experienced relief in her neck and shoulders after receiving injections. (Tr. 23). "He reported that about 10 minutes after the injections the claimant

was able to move her shoulders much better." (Tr. 23).

The opinions of Dr. Fishman, Dr. Romano and Dr. Govindan, inconsistent with other substantial evidence and lacking supporting objective evidence were properly rejected by the ALJ.

### 4. Hypothetical

Claimant contends that the ALJ posed an improper hypothetical to the VE. Commissioner counters that the ALJ posed a proper hypothetical to the VE. The Claimant's contention that the ALJ failed to pose a hypothetical that reflected all of the Claimant's limitations is without merit. As previously discussed, the ALJ properly considered the medical evidence of the record as well as the combined impairments and subjective complaints of pain of the Claimant when determining the Claimant's RFC. The hypothetical presented to the vocational expert was based on Claimant's RFC. Therefore, the hypothetical that was posed to the vocational expert was proper.

## IV. Recommendation

For the foregoing reasons, I recommend that Claimant's Motion for Summary Judgment be DENIED and the Commissioner's Motion for Summary Judgment be GRANTED because the ALJ was substantially justified in his decision. Specifically, the ALJ properly considered the Claimant's combined impairments and subjective complaints of pain when making his determination. Also, the ALJ gave proper weight to the opinion of Claimant's treating physicians, Dr. Govindan, Dr. Fishman and Dr. Romano. Finally, the ALJ posed a proper hypothetical to the VE.

Any party who appears *pro se* and any counsel of record, as applicable, may, within ten

(10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.   A copy of such objections should be submitted to the District Court Judge of Record.  Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to parties who appear *pro se* and any counsel of record, as applicable.

DATED: August 30, 2005

/s/ James E. Seibert\
JAMES E. SEIBERT\
UNITED STATES MAGISTRATE JUDGE